# UNITED STATES DISTRICT COURT

__EASTERN__ DISTRICT OF __NEW YORK__

UNITED STATES OF AMERICA

v.

CORT POYNER

FILED D.C.

AUG 1 3 2013

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

13 - 8367 - WM

**WARRANT FOR ARREST**

KUNTZ, J.

CASE NUMBER:

DEFENDANT.

TO: Special Agent Kurt Dengler_____, and any Authorized United States Official

YOU ARE HEREBY COMMANDED to arrest __CORT POYNER__

Name

and bring him or her forthwith to the nearest magistrate to answer a(n)

[✓] Indictment  [ ] Information  [ ] Complaint  [ ] Order of Court  [ ] Violation Notice  [ ] Probation Violation Petition

charging him or her with (brief description of offense)

Conspiracy to Commit Securities Fraud, Conspiracy to Commit Wire Fraud, Securities Fraud and Wire Fraud

In violation of Title __15 and 18__

James Orenstein

Name of Issuing Officer

Signature of Issuing Officer

Bail fixed at $ _____

United States Code, Section(s) _____

__United States Magistrate Judge__

Title of Issuing Officer

__July 31, 2013 - Brooklyn, NY__

Date and Location

By _____

| RETURN | | |
|---|---|---|
| This warrant was received and executed with the arrest of the above-named defendant at _____ | | |
| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |
| DATE OF ARREST | | |

SC:JPL:CAO/SSS
F.# 2011R01982

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

13-8367-WM

- - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

   - against -

SANDY WINICK,
     also known as "Jerry
     Sarrano," "John Peter
     Smith," "Abdiel
     Vergara," "Robin Cheer,"
     "Glen Forman," "Kyle
     Bendford" and "Stephen
     Thompson,"
GREGORY CURRY,
KOLT CURRY,
     also known as "Michael
     East,"
GREGORY ELLIS,
GARY KERSHNER,
JOSEPH MANFREDONIA,
     also known as "Maurizio,"
     "Richard," "Panama
     Joe" and "Guillermo
     Mendoza,"
CORT POYNER,
SONGKRAM ROY SAHACHAISERE and
WILLIAM SEALS,

              Defendants.

- - - - - - - - - - - - - - - - X

S U P E R S E D I N G
I N D I C T M E N T

Cr. No. <u>13-452 (S-1) (WFK)</u>
(T. 15, U.S.C., §§ 78j(b) and
78ff; T. 18, U.S.C., §§ 371,
912, 981(a)(1)(C), 982(a)(8),
982(b), 1343, 1349, 2 and
3551 <u>et</u> <u>seq.</u>; T. 21 U.S.C.,
§ 853(p); T. 28, U.S.C.,
§ 2461(c))



THE GRAND JURY CHARGES:

<u>INTRODUCTION</u>

      At all times relevant to this Superseding Indictment,

unless otherwise indicated:

      1.   The defendant SANDY WINICK, also known as "Jerry

Sarrano," "John Peter Smith," "Abdiel Vergara," "Robin Cheer,"

"Glen Forman," "Kyle Bendford" and "Stephen Thompson," together
with others, engaged in two separate but interrelated schemes,
referred to herein as the "Penny Stock Scheme" and the "Advance
Fee Scheme."  The Penny Stock Scheme involved fraudulently
inflating and attempting to inflate, the share prices and trading
volumes of certain penny stocks ("Target Stocks").  The Advance
Fee Scheme involved making false promises to investors to induce
them to pay fees for non-existent services to sell their illiquid
penny stock shares.

The Defendants

2.    The defendant SANDY WINICK was a Canadian citizen
who had lived at various times in China, Thailand, Vietnam,
Canada and the United States.  Among other things, WINICK
orchestrated the Penny Stock Scheme and the Advance Fee Scheme.

3.    The defendant GREGORY CURRY was a Canadian citizen
who lived in Thailand.  To further the Advance Fee Scheme,
GREGORY CURRY, among other things, helped to manage call centers
that were used to solicit Advance Fee Scheme victims.  The
defendant GREGORY CURRY also helped to prepare false letters,
websites and email accounts which were used to deceive potential
and actual victims of the Advance Fee Scheme.

4.    The defendant KOLT CURRY, also known as "Michael
East," was a Canadian citizen who lived, at various times, in
Thailand and Canada.  To further the Advance Fee Scheme, KOLT

-2-

CURRY, among other things, helped to manage call centers which were used to solicit Advance Fee Scheme victims.  The defendant KOLT CURRY also personally participated in making fraudulent telephone calls to these victims and helped to prepare false letters, websites and email accounts which were used to deceive potential and actual victims of the Advance Fee Scheme.

5.    The defendant GREGORY ELLIS was a Canadian citizen who lived in Canada.  ELLIS, among other things, acted as the president of several of the companies that issued the Target Stocks (the "Target Stock Companies") and personally participated in fraudulent phone calls to potential and actual victims of the Advance Fee Scheme.

6.    The defendant GARY KERSHNER was a United States citizen who lived in Arizona and Kansas.  To further the Penny Stock Scheme, KERSHNER, among other things, made false statements to regulators and investigators, and also created false and fraudulent documents which were presented to transfer agents and clearing firms to surreptitiously trade in the Target Stocks.

7.    The defendant JOSEPH MANFREDONIA, also known as "Maurizio," "Richard,""Panama Joe" and "Guillermo Mendoza," was a United States citizen who lived in New Jersey.  To further the Penny Stock Scheme, MANFREDONIA, among other things, fraudulently used false press releases to promote the Target Stocks and

-3-

recruited others to manipulate the Target Stocks' prices and trading volumes.

8.   The defendant CORT POYNER was a United States citizen who lived in Florida.  To further the Penny Stock Scheme, POYNER, among other things, knowingly bribed brokers to purchase the Target Stocks on behalf of their clients.

9.   SONGKRAM ROY SAHACHAISERE was a United States citizen who lived in California.  SAHACHAISERE owned Investsource, Inc., a public relations firm that did business with penny stock companies.  To further the Penny Stock Scheme, SAHACHAISERE, among other things, fraudulently promoted the Target Stocks.

10.  WILLIAM SEALS was a United States citizen who lived in California.  To further the Penny Stock Scheme, SEALS, among other things, bought and sold several of the Target Stocks to fraudulently manipulate their share price and market volume. The Target Stock Companies

11.  Blackout Media Corp. ("BKMP") was a holding company with subsidiaries that purported to conduct businesses in television, radio, Internet and print media.  BKMP was a publicly traded corporation whose shares traded on the over-the-counter exchange under the ticker symbol "BKMP."

12.  Resource Group International, Inc. ("RSGR") was a Wyoming corporation headquartered in Thailand, with offices

-4-

located in Scottsdale, Arizona.  At various times, RSGR claimed it was in the business of developing a revolutionary fertilizer, generating wind power, generating solar power and enhancing oil recovery.  RSGR was a publicly traded corporation whose shares traded on the over-the-counter exchange under the ticker symbol "RSGR."

13.  Liquid Gold International Corp. ("Liquid Gold") was a Nevada corporation headquartered in Indiana.  On March 12, 2010, Foy Johnston, a Delaware corporation headquartered in Toronto, Canada ("FOYJ"), acquired Liquid Gold.  Following the acquisition, FOYJ changed its purported business focus from the manufacture of paints, cosmetics, cleaning preparations and environmental control apparatuses to the field of secondary oil recovery.  FOYJ was a publicly traded corporation whose shares traded on the over-the-counter exchange under the ticker symbol "FOYJ."

14.  Imusic Worldwide Inc. ("Imusic" or "IMWL") was a Washington state corporation.  Imusic purported to be an Internet-based business involved in the music industry.  Imusic was a publicly traded corporation whose shares traded on the over-the-counter exchange under the ticker symbol "IMWL."

15.  WGI Holdings Inc. ("WGIH") originally was incorporated in Delaware in December 2006 under the name DataTrak Inc. ("DataTrak") and later changed its name to WGIH.  WGIH

purported to distribute petroleum products and to own oil and gas
wells in Oklahoma.  WGIH was a publicly traded corporation whose
shares traded on the over-the-counter exchange under the ticker
symbol "WGIH."

16.  Talisman Holdings Inc. ("TMHO") originally was
incorporated in Colorado in June 1998 under the name AXYN Corp.
and experienced multiple name changes.  TMHO was a holding
company with subsidiaries that claimed to produce an organic
fish-based fertilizer and also to own interests in gold mines in
Guyana and Peru.  TMHO was a publicly traded corporation whose
shares traded on the over-the-counter exchange under the ticker
symbol "TMHO."

17.  Nikron Technologies Inc. ("NKRN") purported to be
in the enhanced oil recovery business.  NKRN was a publicly
traded corporation whose shares traded on the over-the-counter
exchange under the ticker symbol "NKRN."

18.  Tal-Cap Inc. ("TALC") was a Minnesota corporation
that purported to be in the process of trying to "acquire" a
viable business.  TALC was a publicly traded corporation whose
shares traded on the over-the-counter exchange under the ticker
symbol "TALC."

19.  RainEarth, Inc. ("RainEarth" or "RNER") was a
Nevada corporation, with its principal office located in Beijing,
China.  RainEarth purported to be in the mineral exploration

-6-

business and the field of developing and manufacturing hollow
fiber membrane materials that could be used in the medical field
as well as sewage treatment.  RainEarth was a publicly traded
corporation whose shares traded on the over-the-counter exchange
under the ticker symbol "RNER."

20.  Sync2 Networks Corp. ("SYNW") was a Nevada
corporation that purported to be an international business
development and marketing firm.  SYNW was a publicly traded
corporation whose shares traded on the over-the-counter exchange
under the ticker symbol "SYNW."

21.  MASS Petroleum ("MASP") was a Nevada corporation
headquartered in Vancouver, British Columbia, Canada.  MASP
purported to engage in oil exploration and drilling.  MASP was a
publicly traded corporation whose shares traded on the
over-the-counter exchange under the ticker symbol "MASP."

22.  The shares of BKMP, RSGR, Liquid Gold, FOYJ, IMWL,
WGIH, TMHO, NKRN, TALC, RNER, SYNW and MASP, together with
others, are collectively referred to in this Superseding
Indictment as the Target Stocks.

23.  The companies that issued the Target Stocks used
stock transfer agencies.  Stock transfer agents maintained the
corporate shareholder records.  When a shareholder sold his
stock, for example, the stock transfer agent would substitute the

new shareholder's name for the old one on the official master shareholder listing.

24.   A penny stock was a publicly traded equity security that had a share price of less than five dollars.  Most of the Target Stocks were listed on the Pink Sheets, a stock quotation system for such penny stocks.  The companies that traded on the Pink Sheets generally did not meet the minimum listing requirements for trading on a national securities exchange, such as the New York Stock Exchange or the National Association of Securities Dealers Automated Quotations ("NASDAQ") Stock Market.

The Penny Stock Scheme

25.   The defendant SANDY WINICK, together with others, including defendants GARY KERSHNER, JOSEPH MANFREDONIA, CORT POYNER, SONGKRAM ROY SAHACHAISERE and WILLIAM SEALS (collectively, the "Penny Stock Defendants") perpetrated the Penny Stock Scheme.  The acts taken in furtherance of the Penny Stock Scheme described below all occurred in or about and between January 2008 and July 2013.

26.   To carry out the Penny Stock Scheme, the Penny Stock Defendants fraudulently inflated and attempted to inflate, the share prices and trading volumes of the Target Stocks.  After fraudulently inflating the share prices and trading volumes of the Target Stocks, the Penny Stock Defendants sold the Target

-8-

Stocks at a profit, and attempted to do so, after their fraudulent conduct deceived investors into believing that market forces alone set the Target Stocks' artificially inflated share prices and trading volumes.

27.  The Penny Stock Defendants acquired controlling interests in the Target Stocks for little or no cost.  At the time the Penny Stock Defendants purchased their interests in the Target Stocks, the Target Stocks had little or no trading volume. The Penny Stock Defendants then employed various means to artificially and fraudulently inflate the Target Stocks' share prices and trading volumes.  The Penny Stock Defendants also transferred shares of the Target Stocks into the possession and control of stock promoters who would then comment upon the Target Stocks.

28.  To conceal their control and distribution of the Target Stocks from regulators and investors, the Penny Stock Defendants often falsely reported to brokerage firms the means by which they acquired the Target Stocks.  For example, throughout the scheme, the Penny Stock Defendants deposited the Target Stocks into multiple accounts at different brokerage firms held by nominee entities, including offshore entities.

29.  The Penny Stock Defendants promoted the Target Stocks, themselves and through stock promoters, using email blasts, chat rooms, social networking sites, message boards,

-9-

stock touting websites and newsletters. This promotional activity did not reveal the involvement of the Penny Stock Defendants in the promotion campaigns or their interests in the Target Stocks, nor did the promotional activity accurately disclose the interests of the stock promoters in the Target Stocks. The Penny Stock Defendants also used stolen and invented identities to promote the Target Stocks fraudulently.

30. The Penny Stock Defendants coordinated trading activity with the issuance of press releases, some of which knowingly contained false and misleading information, to create the appearance of market interest in the Target Stocks, thereby inflating the Target Stocks' share prices and providing false pretexts for the increased trading volumes in the Target Stocks.

31. The Penny Stock Defendants disseminated false and misleading information about the Target Stocks including false statements about sales contracts for the Target Stocks Companies' products, governmental approvals purportedly obtained by the Target Stock Companies, the number of outstanding shares and even the very nature of the type of business the Target Stock Companies conducted. For example, the Penny Stock Defendants widely promoted certain Target Stock Companies' partnerships with Chinese hospitals and corporations such as "First Swiss International Group Inc.," even though the Penny Stock Defendants knew that no such partnerships existed.

-10-

32.   The Penny Stock Defendants paid and attempted to pay undisclosed kickbacks to stock brokers to induce the stock brokers to cause their clients to buy the Target Stocks.  The Penny Stock Defendants also engaged in "matched trades," which were orders to buy or sell securities entered with the knowledge that a prearranged matching order on the opposite side of the transaction had been or would be entered.  They also engaged in "wash sales," which were sales between accounts owned by the same person or entity.  Using these kickbacks, matched trades and wash sales, the Penny Stock Defendants were able to artificially increase the trading volumes and shares prices of the Target Stocks.

33.   Many of the phone calls and emails used to coordinate the false and misleading statements and actions of the Penny Stock Scheme were directed toward or emanated from a mobile phone located in Brooklyn, New York.

34.   The proceeds of the fraudulent sales of Target Stocks were wired from brokerage firms where nominee entities had accounts to various bank accounts, also in the names of the nominee entities, including bank accounts based in Panama and Costa Rica.  Portions of the proceeds of the sale of the Target Stocks were then wired to the Penny Stock Defendants, minus commissions charged by those who controlled the nominee entities. Through these nominee entities, defendants SANDY WINICK, GARY

-11-

KERSHNER, JOSEPH MANFREDONIA, CORT POYNER, SONGKRAM ROY
SAHACHAISERE, WILLIAM SEALS and others deposited and sold stock.

The Advance Fee Scheme

35.   The defendant SANDY WINICK, together with others,
including defendants GREGORY CURRY, KOLT CURRY, also known as
"Michael East" and GREGORY ELLIS (collectively, the "Advance Fee
Defendants") perpetrated the Advance Fee Scheme.   The acts taken
in furtherance of the Advance Fee Scheme described below all
occurred in or about January 2009 and July 2013.

36.   To carry out the Advance Fee Scheme, the Advance
Fee Defendants fraudulently solicited investors in penny stocks,
including the Target Stocks (the "Advance Fee Victims"), to pay
advance fees that purportedly would enable the Advance Fee
Victims to sell their nearly worthless penny stocks at a profit.
The Advance Fee Defendants invented non-existent businesses such
as law firms, consulting agencies and other companies (the "Fake
Companies") as part of the scheme to convince the Advance Fee
Victims to pay a fee in advance of selling securities.   The Fake
Companies' fees came in the form of a phony commission,
regulatory fees or taxes, or some other fictitious expenses.   The
defendants knew that once the "advance fee" was paid they would
keep the advance fees for their own purposes and do nothing for
the Advance Fee Victims in return.

37.   The Advance Fee Defendants posed as employees of

-12-

the Fake Companies including the Madden Group, Inc. ("Madden Group"), Smith, Shore and Jenkins ("Smith Shore"), Benson Sinclair and Select American Transfer Company ("Select ATC"); and actual entities such as the Internal Revenue Service ("IRS"), among others.  In reality, the Advance Fee Defendants had no official role at the Fake Companies or the IRS.  In fact, the Madden Group, Smith Shore, Benson Sinclair and Select ATC, and others, solely existed to facilitate the Advance Fee Scheme.  To this end, the Advance Fee Defendants created bank accounts, phone numbers, stationery, email accounts and websites solely to communicate with potential and actual victims of the Advance Fee Scheme.

38.   The Advance Fee Defendants maintained calling centers in Vietnam, Thailand and Canada.  The Advance Fee Victims lived in countries throughout the world.  Beginning on or about March 1, 2013, the defendant WINICK began recruiting additional people to open new calling centers in Brooklyn, New York, and Toronto, Canada.  These recruiting efforts included multiple telephone calls from Bangkok, Thailand to Brooklyn, New York.

39.   Individuals, acting at the direction and control of the Advance Fee Defendants, placed phone calls from the calling centers (the "Callers") to actual and potential victims. The Callers falsely claimed to represent unidentified buyers interested in purchasing the Advance Fee Victims' restricted

stock at an attractive price. On these occasions, the Callers
falsely advised the Advance Fee Victims that they needed to pay a
fee prior to any stock sale for a legal opinion regarding the
sale of "restricted stock" ("Legal Opinion Fee").

40. On other occasions, the Callers falsely claimed to
be associated with a law firm that sought to sue the Target Stock
Companies. The Callers falsely advised the Advance Fee Victims
who sought to join the lawsuit that they needed first to pay a
fee ("Lawsuit Fee").

41. Shortly after the Advance Fee Victims agreed to
pay the Legal Opinion Fee or the Lawsuit Fee, they received an
invoice for the fee via email. Once the Advance Fee Victims paid
the Legal Opinion Fee or the Lawsuit Fee, the Callers advised the
Advance Fee Victims that they owned "warrants" in addition to the
shares of stock held.

42. A warrant, or stock warrant, was a security issued
by a corporation. The owner could redeem the warrant for shares
of stock in the company for a predetermined price. A warrant
could be traded on an exchange and could have a very long
duration to expiration or no expiration at all.

43. The Callers falsely advised the Advance Fee
Victims that the unidentified purchaser also was interested in
purchasing their warrants at an attractive price, but first, a
fee had to be paid to convert the warrants into a saleable

-14-

security ("Warrant Conversion Fee"). The Callers again falsely advised the Advance Fee Victims that their payment of the Warrant Conversion Fee would result in the unnamed investors depositing funds directly into the Advance Fee Victims' accounts to purchase the warrants.

44. Before any payment was made, however, the Advance Fee Defendants sent each Advance Fee Victim, via emails across state and international lines, a notice that the IRS required advance payment of approximately 30 percent of the transaction in taxes before the sale could be consummated (the "IRS Fee"). These emails contained false and fraudulent communications purporting to issue from employees of the IRS with names such as "Daniel Summers" and "Trevor Duncan." The Advance Fee Defendants created these fictitious IRS documents and personas solely for the purpose of defrauding the Advance Fee Victims.

45. After payment of the required advance fees, none of the Advance Fee Victims received the anticipated sales proceeds. During the course of the Advance Fee Victims' dealings with the Advance Fee Defendants, through the various Fake Companies, the Advance Fee Victims received letters, forms, invoices, wire instructions, and other documents from the Fake Companies via email and fax. The Advance Fee Victims also sent completed documents, receipts and requested forms back to the Fake Companies by email or fax.

-15-

46.   The Advance Fee Defendants directed the Advance Fee Victims to wire the Legal Opinion Fee, the Lawsuit Fee, the Warrant Conversion Fee and the IRS Fee through Citibank in New York City, to Credit Card Services Company SAL, which then passed through Citibank's Funds Transfer Network ("FTN"), which was located in Getzville, New York.  The fees then were sent to a Citibank account maintained in Beirut, Lebanon.

47.   In 2009 and 2010 alone, the proceeds of the Advance Fee Scheme totaled more than $5 million.  Those proceeds were wired to bank accounts throughout the world, where defendants SANDY WINICK, GREG CURRY, KOLT CURRY and GREG ELLIS, among others used those fraudulently obtained funds for their own purposes.

<u>COUNT ONE</u>
(Conspiracy to Commit Securities Fraud
- the Penny Stock Scheme)

48.   The allegations contained in paragraphs one through forty-seven are realleged and incorporated as though fully set forth in this paragraph.

49.   On or about and between May 1, 2008 and July 31, 2013, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants SANDY WINICK, also known as "Jerry Sarrano," "John Peter Smith," "Abdiel Vergara," "Robin Cheer," "Glen Forman," "Kyle Bendford" and "Stephen Thompson," GARY KERSHNER, JOSEPH MANFREDONIA, also

-16-

known as "Maurizio," "Richard," "Panama Joe" and "Guillermo Mendoza," CORT POYNER, SONGKRAM ROY SAHACHAISERE and WILLIAM SEALS, together with others, did knowingly and willfully conspire to use and employ manipulative and deceptive devices and contrivances, contrary to Rule 10b-5 of the Rules and Regulations of the United States Securities and Exchange Commission, Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which would and did operate as a fraud and deceit upon investors and potential investors in the Target Stocks, in connection with the purchase and sale of investments in the Target Stocks, directly and indirectly, by use of means and instrumentalities of interstate commerce and the mails, contrary to Title 15, United States Code, Sections 78j(b) and 78ff.

50.  In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendants WINICK, KERSHNER, MANFREDONIA, POYNER, SAHACHAISERE and SEALS, together with others, committed and caused to be committed, among others, the following:

OVERT ACTS

-17-

    a.    On or about November 29, 2008, POYNER stated, among other things, how the Penny Stock Defendants would be able to manipulate the Target Stocks' prices from approximately $0.20 per share to over $1.00 per share.

    b.    On or about January 14, 2009, POYNER arranged, among other things, for cash payments to be made for purchases of the Target Stocks to manipulate the Target Stocks' price and trading volume.

    c.    On or about June 26, 2009, SAHACHAISERE received a telephone call from an individual in Brooklyn, New York, to discuss, among other things, how the Penny Stock Defendants would be able to drive up the prices of the Target Stocks and how they have access to insiders at the Target Stock Companies.

    d.    On or about October 19, 2009, SAHACHAISERE placed a telephone call from Huntington Beach, California, to an individual in Brooklyn, New York, to discuss, among other things, the process by which the Penny Stock Defendants would conceal the true ownership the Target Stocks.

    e.    On or about June 23, 2011, KERSHNER received a telephone call from an individual in Brooklyn, New York, to discuss, among other things, how KERSHNER would create false documents with fake names and signatures for the Target Stock Companies.

-18-

f.    On or about July 22, 2011, KERSHNER received a telephone call from an individual in Brooklyn, New York, to discuss, among other things, how KERSHNER would create false names of executives in fraudulent documents that the Penny Stock Defendants would use in connection with the Target Stock Companies.

g.    On or about June 1, 2012, WINICK placed a telephone call from Bangkok, Thailand, to an individual in Brooklyn, New York, to discuss, among other things, issuing false press releases from the Target Stock Companies for use by the Penny Stock Defendants.

h.    On or about June 4, 2012, MANFREDONIA placed a telephone call from Freehold, New Jersey, to an individual in Brooklyn, New York, to discuss, among other things, how the Penny Stock Defendants should build trading volume for the Target Stocks before intervention by securities regulators.

i.    On or about February 24, 2012, WINICK received a telephone call from an individual in Brooklyn, New York, to discuss, among other things, how the Penny Stock Defendants should liquidate the Target Stocks prior to intervention by the Federal Bureau of Investigation.

j.    On or about February 27, 2012, WINICK received a telephone call from an individual in Brooklyn, New York, to discuss, among other things, how the Penny Stock

-19-

Defendants should liquidate the Target Stocks because of the risk posed by an investigation by securities regulators.

      k.    On or about August 29, 2012, MANFREDONIA received a telephone call from an individual in Brooklyn, New York, to discuss, among other things, how none of the Penny Stock Defendants even remember the Target Stock Companies' false business plans.

      l.    On or about September 18, 2012, MANFREDONIA placed a telephone call from Freehold, New Jersey, to an individual in Brooklyn, New York, to discuss, among other things, rescheduling the dissemination of the Target Stock Companies' false press releases to coincide with the promotion of the Target Stocks.

      (Title 18, United States Code, Sections 371 and 3551 _et seq_.)

**COUNT TWO**
(Conspiracy to Commit Wire Fraud
- the Penny Stock Scheme)

      51.    The allegations contained in paragraphs one through forty-seven are realleged and incorporated as if fully set forth in this paragraph.

      52.    On or about and between January 1, 2008 and July 31, 2013, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants SANDY WINICK, also known as "Jerry Sarrano," "John Peter Smith,"

-20-

"Abdiel Vergara," "Robin Cheer," "Glen Forman," "Kyle Bendford" and "Stephen Thompson," GARY KERSHNER, JOSEPH MANFREDONIA, also known as "Maurizio," "Richard," "Panama Joe" and "Guillermo Mendoza," CORT POYNER, SONGKRAM ROY SAHACHAISERE and WILLIAM SEALS, together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud the Penny Stock Victims, and to obtain money and property from them by means of materially false and fraudulent pretenses, representations and promises related to the Penny Stock Scheme, and, for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce writings, signs, signals, pictures and sounds, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

COUNT THREE
(Conspiracy to Commit Wire Fraud
- the Advance Fee Scheme)

53.  The allegations contained in paragraphs one through forty-seven are realleged and incorporated as if fully set forth in this paragraph.

54.  On or about and between January 1, 2008 and July 31, 2013, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants SANDY

-21-

WINICK, also known as "Jerry Sarrano," "John Peter Smith,"
"Abdiel Vergara," "Robin Cheer," "Glen Forman," "Kyle Bendford"
and "Stephen Thompson," GREGORY CURRY, KOLT CURRY, also known as
"Michael East," and GREGORY ELLIS, together with others, did
knowingly and intentionally conspire to devise a scheme and
artifice to defraud the Advance Fee Victims, and to obtain money
and property from them by means of materially false and
fraudulent pretenses, representations and promises related to the
Advance Fee Scheme, and, for the purpose of executing such scheme
and artifice, to transmit and cause to be transmitted by means of
wire communication in interstate and foreign commerce writings,
signs, signals, pictures and sounds, contrary to Title 18, United
States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551
et seq.)

### COUNTS FOUR THROUGH THIRTEEN
(Wire Fraud - the Penny Stock Scheme)

55.   The allegations contained in paragraphs one
through forty-seven are realleged and incorporated as if fully
set forth in this paragraph.

56.   On or about and between July 22, 2009 and December
1, 2012, both dates being approximate and inclusive, within the
Eastern District of New York and elsewhere, the defendants SANDY
WINICK, also known as "Jerry Sarrano," "John Peter Smith,"
"Abdiel Vergara," "Robin Cheer," "Glen Forman," "Kyle Bendford"

-22-

and "Stephen Thompson," GARY KERSHNER, JOSEPH MANFREDONIA, also

known as "Maurizio," "Richard," "Panama Joe" and "Guillermo

Mendoza," CORT POYNER, SONGKRAM ROY SAHACHAISERE and WILLIAM

SEALS, together with others, did knowingly and intentionally

devise a scheme and artifice to defraud the Penny Stock Victims,

to wit: the Penny Stock Scheme, and to obtain money and property

from them by means of materially false and fraudulent pretenses,

representations and promises, and for the purpose of executing

such scheme and artifice, did transmit and caused to be

transmitted, by means of wire communication in interstate and

foreign commerce, writings, signs, signals, pictures and sounds,

as set forth below:

| Count | Approximate Date | Description of the Wire |
|-------|------------------|-------------------------|
| FOUR | June 26, 2009 | Telephone call from Brooklyn, New York, to Huntington Beach, California |
| FIVE | October 19, 2009 | Telephone call from Huntington Beach, California, to Brooklyn, New York |
| SIX | June 23, 2011 | Telephone call from Brooklyn, New York, to Tucson, Arizona |
| SEVEN | July 22, 2011 | Telephone call from Brooklyn, New York, to Tucson, Arizona |
| EIGHT | June 1, 2012 | Telephone call from Bangkok, Thailand, to Brooklyn, New York |
| NINE | June 4, 2012 | Telephone call from Freehold, New Jersey, to Brooklyn, New York |
| TEN | February 24, 2012 | Telephone call from Brooklyn, New York, to Bangkok, Thailand |
| ELEVEN | February 27, 2012 | Telephone call from Brooklyn, New York, to Bangkok, Thailand |

| TWELVE | August 29, 2012 | Telephone call from Brooklyn, New York, to Freehold, New Jersey |
| THIRTEEN | September 18, 2012 | Telephone call from Freehold, New Jersey, to Brooklyn, New York |

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

### COUNTS FOURTEEN THROUGH EIGHTEEN
(Wire Fraud - the Advance Fee Scheme)

57.   The allegations contained in paragraphs one through forty-seven are realleged and incorporated as if fully set forth in this paragraph.

58.   On or about and between March 6, 2013 and May 7, 2013, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants SANDY WINICK, also known as "Jerry Sarrano," "John Peter Smith," "Abdiel Vergara," "Robin Cheer," "Glen Forman," "Kyle Bendford" and "Stephen Thompson," GREGORY CURRY, KOLT CURRY, also known as "Michael East," and GREGORY ELLIS, together with others, did knowingly and intentionally devise a scheme and artifice to defraud the Advance Fee Victims, to wit: the Advance Fee Scheme, and to obtain money and property from them by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, did transmit and caused to be transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, as set forth below:

-24-

| Count | Approximate Date | Description of the Wire |
|---|---|---|
| FOURTEEN | March 6, 2013 | Telephone call from Brooklyn, New York, to Bangkok, Thailand |
| FIFTEEN | March 21, 2013 | Telephone call from Bangkok, Thailand, to Brooklyn, New York |
| SIXTEEN | April 8, 2013 | Telephone call from Bangkok, Thailand, to Brooklyn, New York |
| SEVENTEEN | May 1, 2013 | Telephone call from Queens, New York, to Toronto, Canada |
| EIGHTEEN | May 7, 2013 | Telephone call from Brooklyn, New York, to Bangkok, Thailand |

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

<u>COUNT NINETEEN</u>
(Securities Fraud - RSGR)

59.  The allegations contained in paragraphs one through forty-seven are realleged and incorporated as though fully set forth in this paragraph.

60.  In or about and between May 2008 and July 2013, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants SANDY WINICK, also known as "Jerry Sarrano," "John Peter Smith," "Abdiel Vergara," "Robin Cheer," "Glen Forman," "Kyle Bendford" and "Stephen Thompson," JOSEPH MANFREDONIA, also known as "Maurizio," "Richard," "Panama Joe" and "Guillermo Mendoza," CORT POYNER, SONGKRAM ROY SAHACHAISERE and WILLIAM SEALS together with others, did knowingly and willfully use and employ one or more

-25-

manipulative and deceptive devices and contrivances, contrary to Rule 10b-5 of the Rules and Regulations of the United States Securities and Exchange Commission, Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing one or more devices, schemes and artifices to defraud; (b) making one or more untrue statements of material fact and omitting to state one or more material facts necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading; and (c) engaging in one or more acts, practices and courses of business which would and did operate as a fraud and deceit upon one or more investors or potential investors in RSGR, in connection with the purchases and sales of investments in RSGR, directly and indirectly, by use of means and instrumentalities of interstate commerce and the mails.

(Title 15, United States Code, Sections 78j(b) and 78ff; Title 18, United States Code, Sections 2 and 3551 et seq.)

### COUNT TWENTY
(Securities Fraud - FOYJ)

61.   The allegations contained in paragraphs one through forty-seven are realleged and incorporated as though fully set forth in this paragraph.

62.   In or about and between February 2010 and July 2013, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant SANDY WINICK, also known as "Jerry Sarrano," "John Peter Smith,"

-26-

"Abdiel Vergara," "Robin Cheer," "Glen Forman," "Kyle Bendford" and "Stephen Thompson," together with others, did knowingly and willfully use and employ one or more manipulative and deceptive devices and contrivances, contrary to Rule 10b-5 of the Rules and Regulations of the United States Securities and Exchange Commission, Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing one or more devices, schemes and artifices to defraud; (b) making one or more untrue statements of material fact and omitting to state one or more material facts necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading; and (c) engaging in one or more acts, practices and courses of business which would and did operate as a fraud and deceit upon one or more investors and potential investors in FOYJ, in connection with the purchases and sales of investments in FOYJ, directly and indirectly, by use of means and instrumentalities of interstate commerce and the mails.

(Title 15, United States Code, Sections 78j(b) and 78ff; Title 18, United States Code, Sections 2 and 3551 <u>et</u> <u>seq</u>.)

COUNT TWENTY-ONE
(Securities Fraud - TMHO)

63.   The allegations contained in paragraphs one through forty-seven are realleged and incorporated as though fully set forth in this paragraph.

64.    In or about and between February 2011 and July 2013, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants SANDY WINICK, also known as "Jerry Sarrano," "John Peter Smith," "Abdiel Vergara," "Robin Cheer," "Glen Forman," "Kyle Bendford" and "Stephen Thompson," GARY KERSHNER and JOSEPH MANFREDONIA, also known as "Maurizio," "Richard," "Panama Joe" and "Guillermo Mendoza," together with others, did knowingly and willfully use and employ one or more manipulative and deceptive devices and contrivances, contrary to Rule 10b-5 of the Rules and Regulations of the United States Securities and Exchange Commission, Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing one or more devices, schemes and artifices to defraud; (b) making one or more untrue statements of material fact and omitting to state one or more material facts necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading; and (c) engaging in one or more acts, practices and courses of business which would and did operate as a fraud and deceit upon one or more investors and potential investors in TMHO, in connection with the purchases and sales of investments in TMHO, directly and indirectly, by use of means and instrumentalities of interstate commerce and the mails.

(Title 15, United States Code, Sections 78j(b) and 78ff; Title 18, United States Code, Sections 2 and 3551 et seq.)

-28-

## COUNT TWENTY-TWO
(Securities Fraud - WGIH)

65. The allegations contained in paragraphs one through forty-seven are realleged and incorporated as though fully set forth in this paragraph.

66. In or about and between April 2012 and July 2013, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants SANDY WINICK, also known as "Jerry Sarrano," "John Peter Smith," "Abdiel Vergara," "Robin Cheer," "Glen Forman," "Kyle Bendford" and "Stephen Thompson," GARY KERSHNER and JOSEPH MANFREDONIA, also known as "Maurizio," "Richard," "Panama Joe" and "Guillermo Mendoza," together with others, did knowingly and willfully use and employ one or more manipulative and deceptive devices and contrivances, contrary to Rule 10b-5 of the Rules and Regulations of the United States Securities and Exchange Commission, Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing one or more devices, schemes and artifices to defraud; (b) making one or more untrue statements of material fact and omitting to state one or more material facts necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading; and (c) engaging in one or more acts, practices and courses of business which would and did operate as a fraud and deceit one or more investors and potential investors in WGIH, in connection with the purchases and

-29-

sales of investments in WGIH, directly and indirectly, by use of means and instrumentalities of interstate commerce and the mails.

(Title 15, United States Code, Sections 78j(b) and 78ff; Title 18, United States Code, Sections 2 and 3551 et seq.)

COUNT TWENTY-THREE
(False Impersonation of an Officer and Employee
of the United States - "Trevor Duncan")

67. The allegations contained in paragraphs one through forty-seven are re-alleged and incorporated as though fully set forth herein.

68. On or about and between January 1, 2008 and July 31, 2013, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants SANDY WINICK, also known as "Jerry Sarrano," "John Peter Smith," "Abdiel Vergara," "Robin Cheer," "Glen Forman," "Kyle Bendford" and "Stephen Thompson," GREGORY CURRY, KOLT CURRY, also known as "Michael East," and GREGORY ELLIS, together with others, knowingly and intentionally falsely assumed and pretended to be "Trevor Duncan," an officer and employee acting under the authority of the United States and any department, agency and officer thereof, and acting as such, and in such pretended character demanded and obtained money, papers, documents and things of value, to wit: the fictitious IRS Fee.

(Title 18, United States Code, Sections 912, 2 and 3551 et seq.)

-30-

## COUNT TWENTY-FOUR
### (False Impersonation of an Officer and Employee of the United States - "Daniel Summers")

69.  The allegations contained in paragraphs one through forty-seven are re-alleged and incorporated as though fully set forth herein.

70.  On or about and between January 1, 2008 and July 31, 2013, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants SANDY WINICK, also known as "Jerry Sarrano," "John Peter Smith," "Abdiel Vergara," "Robin Cheer," "Glen Forman," "Kyle Bendford" and "Stephen Thompson," GREGORY CURRY, KOLT CURRY, also known as "Michael East," and GREGORY ELLIS, together with others, knowingly and intentionally falsely assumed and pretended to be "Daniel Summers," an officer and employee acting under the authority of the United States and any department, agency and officer thereof, and acting as such, and in such pretended character demanded and obtained money, papers, documents and things of value, to wit: the fictitious IRS Fee.

(Title 18, United States Code, Sections 912, 2 and 3551 et seq.)

### CRIMINAL FORFEITURE ALLEGATION AS TO COUNTS ONE AND TWO, FOUR THROUGH THIRTEEN, AND NINETEEN THROUGH TWENTY-TWO

71.  The United States hereby gives notice to the defendants charged in Counts One and Two, Four through Thirteen,

-31-

and Nineteen through Twenty-Two that, upon their conviction of

any such offenses, the government will seek forfeiture in

accordance with Title 18, United States Code, Section

981(a)(1)(C) and Title 28, United States Code, Section 2461(c),

which require any person convicted of such offenses to forfeit

any property, real or personal, constituting or derived from

proceeds obtained directly or indirectly as a result of such

offenses.

      72.  If any of the above-described forfeitable

property, as a result of any act or omission of the defendants:

      a.  cannot be located upon the exercise of due

diligence;

      b.  has been transferred or sold to, or deposited

with, a third party;

      c.  has been placed beyond the jurisdiction of

the Court;

      d.  has been substantially diminished in value;

or

      e.  has been commingled with other property,

which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21,

United States Code, Section 853(p), as incorporated by Title 28,

United States Code, Section 2461(c), to seek forfeiture of any

other property of the defendants, up to the value of the
forfeitable property described in this forfeiture allegation.

(Title 28, United States Code, Section 2461(c); Title
18, United States Code, Section 981(a)(1)(C); Title 21, United
States Code, Section 853(p))

### CRIMINAL FORFEITURE ALLEGATION AS TO
### COUNTS THREE AND FOURTEEN THROUGH EIGHTEEN

73.   The United States hereby gives notice to the
defendants that, upon conviction of any of the offenses charged
in Count Three or Counts Fourteen through Eighteen, the
government will seek forfeiture in accordance with Title 18,
United States Code, Section 982(a)(8), which requires any person
convicted of such offenses to forfeit any property (A) used or
intended to be used to commit, to facilitate, or to promote the
commission of such offense, and (B) constituting derived from, or
traceable to the gross proceeds obtained directly or indirectly
as a result of such offenses.

74.   If any of the above-described forfeitable
property, as a result of any act or omission of the defendants:

a.    cannot be located upon the exercise of due
diligence;

b.    has been transferred or sold to, or deposited
with, a third party;

c.    has been placed beyond the jurisdiction of
the Court;

-33-

d.    has been substantially diminished in value;
or

e.    has been commingled with other property,

which cannot be divided without difficulty;

it is the intent of the United States, pursuant to  Title 21,

United States Code, Section 853(p), as incorporated by Title 18,

United States Code, Section 982(b), to seek forfeiture of any

other property of the defendants, up to the value of the

forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(8) and

982(b); Title 21, United States Code, Section 853(p))

A TRUE BILL

_____
FOREPERSON

LORETTA E. LYNCH
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

-34-

F. #2011R01982

FORM DBD-34
JUN. 85

No. 13-CR-452 (S-1) (WFK)

# UNITED STATES DISTRICT COURT

## EASTERN *District of* NEW YORK

## CRIMINAL DIVISION

### THE UNITED STATES OF AMERICA

*vs.*

*SANDY WINICK, also known as "Jerry Sarrano," "John Peter Smith," "Abdiel Vergara," "Robin Cheer," "Glen Forman," "Kyle Bendford" and "Stephen Thompson," GREGORY CURRY, KOLT CURRY, also known as "Michael East," GREGORY ELLIS, GARY KERSHNER, JOSEPH MANFREDONIA, also known as "Maurizio," "Richard,""Panama Joe" and "Guillermo Mendoza," CORT POYNER, SONGKRAM ROY SAHACHAISERE and WILLIAM SEALS,*
Defendants.

## SUPERSEDING INDICTMENT

(T. 15, U.S.C., §§ 78j(b) and 78ff; T. 18, U.S.C., §§ 371, 912, 981(a)(1)(C), 982(a)(8), 982(b), 1343, 1349, 2 and 3551 et seq.; T. 21, U.S.C., § 853(p); T. 28, U.S.C., § 2461(c).)

*A true bil'*

_____
Foreperson

*Filed in open court this* _____ *day, of* _____ *A.D. 20* __

_____
Clerk

*Bail, $* _____

***Christopher Ott, Assistant U.S. Attorney (718) 254-6154***